UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL OMSTEAD, et al.,

    Plaintiffs,

v.

DELL, INC.,

    Defendant.
_____/

No. C 06-6293 PJH

**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Before the court is the motion of defendant Dell, Inc. ("Dell"), for an order staying the above-entitled action and an order compelling arbitration. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion.[1]

## BACKGROUND

Dell sells computers directly to end-user customers via Internet and phone orders. Plaintiffs in this proposed class action allege that they purchased notebook computers from Dell between July 2004 and January 2005, at prices ranging from $1200 to $1500.

Plaintiffs claim that the affected computers were manufactured with three defects – inadequate cooling systems, a power supply that prematurely fails when used as intended,

---

[1] The court finds the motion to be appropriate for decision without oral argument. See Civil L.R. 7-1(b); see also Partridge v. Reich, 141 F.3d 920, 926 (9th Cir. 1998); Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp., 933 F.2d 724, 729 (9th Cir. 1991) (court's consideration of moving and opposition papers deemed adequate substitute for formal hearing).

and motherboards that prematurely fail when used as intended.  Plaintiffs assert that these defects cause the computers to shut down unexpectedly or fail to boot up, and/or cause the batteries to fail to charge, fail to hold a charge, or prematurely deteriorate.

Plaintiffs assert seven causes of action:  (1) violation of the Consumer Legal Remedies Act, California Civil Code § 1750, et seq.; (2) violation of California Business & Professions Code §§ 17200, 17500; (3) fraudulent concealment; (4) breach of Song-Beverly Consumer Warranty Act, California Civil Code § 1791, et seq.; (5) breach of express warranty; (6) breach of implied warranty; and (7) unjust enrichment.

Dell asserts that at the time customers purchase computers from Dell, the customers and Dell agree to a sales agreement titled "U.S. Terms and Conditions of Sale" ("the Agreement").  The Agreement contains a binding arbitration provision in a separately numbered paragraph.  The Agreement also contains a choice-of-law provision, which states that Texas law shall govern any dispute related to the customer's purchase.

Dell contends that when plaintiffs purchased their computers, Dell followed its general practice and sent plaintiffs either a written acknowledgment or a confirmation by e-mail, informing plaintiffs that their purchase was subject to Dell's "Conditions and Terms of Sale."  The written acknowledgment of the sale of the computer stated, "This document contains a dispute resolution clause."

Plaintiffs "assume for the sake of [the present] motion that Dell presented [p]laintiffs with its Terms and Conditions at the time of sale," and that the applicable Terms and Conditions are those attached as an exhibit to the Declaration of Mary Pape in support of Dell's motion.

**DISCUSSION**

A. Legal Standard

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., any party bound to an arbitration agreement that falls within the scope of the FAA may bring a motion in federal district court to compel arbitration and stay the proceeding pending resolution of the arbitration.  9 U.S.C. §§ 3, 4.  The FAA eliminates district court discretion and requires the

court to compel arbitration of issues covered by the arbitration agreement. Dean Witter Reynolds, Inc., v. Byrd, 470 U.S. 213, 218 (1985).

The FAA provides that written agreements to arbitrate disputes arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "creates a body of federal substantive law of arbitrability, enforceable in both state and federal courts and pre-empting any state laws or policies to the contrary." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).

The role of the federal courts in these circumstances is limited to determining whether the arbitration clause at issue is valid and enforceable under § 2 of the FAA. Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). However, despite the "liberal federal policy favoring arbitration agreements," Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 81 (2000), state law is not entirely displaced from federal arbitration analysis. Under § 2, "state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987). Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability may be applied to invalidate arbitration agreements without contravening § 2. Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 686 (1996). In making this determination, federal courts may not address the validity or enforceability of the contract as a whole. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 401 (1967); see Ticknor v. Choice Hotels Int'l, Inc., 265 F.3d 931, 936-37 (9th Cir. 2001).

B.      Dell's Motion to Stay and Compel Arbitration

Dell seeks an order compelling arbitration. Dell also argues that Texas law applies, based on the choice-of-law provision in the Agreement. Dell asserts further that the arbitration agreement is fair and enforceable – neither procedurally nor substantively unconscionable under Texas law.

Plaintiffs assert that California law – not Texas law – governs the enforceability of

3

the arbitration clause. They contend that under California law, the arbitration agreement is both procedurally and substantively unconscionable – in particular, because it contains a class-action waiver.

Federal courts sitting in diversity look to the law of the forum state in making a choice of law determination. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Sparling v. Hoffman Constr. Co., Inc., 864 F.2d 635, 641 (9th Cir. 1988); see also Fields v. Legacy Health Sys., 413 F.3d 943, 950 (9th Cir. 2005). Thus, the complaint in the present action having been filed in California, California's choice-of-law rules apply.

In California, a plaintiff seeking to defeat a forum-selection clause has a heavy burden and must demonstrate that enforcement would be unreasonable under the facts of the case. Lu v. Dryclean-U.S.A. of California, 11 Cal. App. 4th 1490, 1493 (1992). California courts use two analyses for selecting which law should apply in an action. When the parties have an agreement that another jurisdiction's law will govern their disputes, the appropriate analysis is set forth in Nedlloyd Lines B.V. v. Superior Court, 3 Cal. 4th 459, 464-65 (1992), which addresses the enforceability of choice of law provisions. See Washington Mut. Bank, FA v. Superior Court, 24 Cal. 4th 906, 914-15 (2001).

Alternatively, when there is no advance agreement, but the action involves claims from residents outside the State of California, the court may analyze the governmental interests of the various jurisdictions involved to select the most appropriate law. Id. at 915. These two analyses are based on the provisions of § 187 and § 188 of the Restatement Second of Conflicts of Laws.[2]

In determining the enforceability of a contractual choice-of-law provision, California courts apply the principles set forth in § 187 of the Restatement, which reflects a strong policy favoring enforcement of such provisions. Nedlloyd, 3 Cal. 4th at 464-65. Section 187 provides, in part,

---

[2] California usually follows the Restatement in every relevant field. 1 Witkin, Summary of California Law, Contracts § 40; see also Mencor Enter., Inc. v. Hets Equities Corp., 190 Cal. App. 3d 432, 436 (1987).

4

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a)  the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b)  application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Rest. 2d, Conflict of Laws, § 187(2).

"Nedlloyd's analysis is properly applied in the context of consumer adhesion contracts." Washington Mut., 24 Cal. 4th at 918.  In the case of contracts of adhesion "'the forum will scrutinize such contracts with care and will refuse to apply any choice-of-law provision they may contain if to do so would result in substantial injustice to the adherent.'" Rest. 2d, Conflict of Laws § 187, com. b, quoted in Washington Mut., 24 Cal. 4th at 918, n.6.

Thus, under § 187(2), the proper approach is for the court to determine, first, whether the chosen state has a substantial relationship to the parties or their transaction, or whether there is any other reasonable basis for the parties' choice of law.  Nedlloyd, 3 Cal. 4th at 466.  If neither of these tests is met, the court need not enforce the parties' choice of law.  If either test is met, however,

> the court must next determine whether the chosen state's law is contrary to a fundamental policy of California.  If there is no such conflict, the court shall enforce the parties' choice of law.  If, however, there is a fundamental conflict with California law, the court must determine whether California has a "materially greater interest than the chosen state in the determination of the particular issue."

Id. (quoting Rest. 2d, Conflict of Laws, § 187(2)).

Applying this standard to the facts of the present case, the court must first determine whether Texas has a substantial relationship to the parties or their transaction, or whether there is any other reasonable basis for the parties' choice of law.  Dell is a Delaware

5

corporation, with its principal place of business in Texas.  Thus, it is undisputed that Texas has a substantial relationship to the parties and provides a reasonable basis for the choice of Texas law.  See Nedlloyd, 3 Cal. 4th at 467 (noting that substantial relationship will be met if one of the parties is domiciled in or resides in the chosen state).  Moreover, plaintiffs concede that Texas law would be a reasonable choice of law.

The court must next determine whether the law of Texas is contrary to a "fundamental policy" of California.  Id. at 466; see also Washington Mut., 24 Cal. 4th at 916.  Plaintiffs argue that Texas law conflicts with fundamental policies of California law.  Under Texas law, an arbitration clause with a class action waiver is not substantively unconscionable; rather, it is likely to be enforceable.  See AutoNation USA Corp. v. Leroy, 105 S.W. 3d 190, 199-200 (Tex. App. 2003).  Plaintiffs assert that because Dell's arbitration clause and class action waiver would be likely to be enforced under Texas law, Texas law would conflict with California law, where, they assert, the class action waiver would be unenforceable.

Plaintiffs claim that the California Court of Appeal has held that "take it or leave it" arbitration provisions containing class action waivers are "contrary to fundamental public policy in California" (citing Klussman v. Cross-Country Bank, 134 Cal. App. 4th 1283 (2005)).  Plaintiffs also argue that substantial injustice will result if the court enforces the choice-of-law provision, because the class members will be deprived of the right to invoke the laws of California that were designed to regulate business conducted in California.

The court finds that Texas law applies.  Under the two-prong test set forth in the Restatement and explained in Nedlloyd, there is no dispute that Texas has a substantial relationship to the parties.  Thus, in order to prevail, plaintiffs must show both that Texas law conflicts with fundamental public policy of California, and that California has a materially greater interest in the resolution of the matters at issue.  Here, however, plaintiffs have not established that there is a fundamental public policy against class-action waivers in California.

In Discover, the California Supreme Court made it clear that there is no blanket

6

1 policy in California against class action waivers in the consumer context.  See Provencher
2 v. Dell, Inc., 409 F.Supp. 2d 1196, 1201-02 (C.D. Cal. 2006).  Specifically, the Discover
3 court held that class action waivers are unenforceable only in those limited circumstances
4 where the

> waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small amounts of money.

Discover, 36 Cal. 4th at 162-63.

At most, therefore, the Discover court found a limited policy against class action waivers.  See Klussman, 134 Cal. App. 4th at 1297-98.  However, any such policy would not apply in the present case, where the amount of damages at issue is not "small," and the Agreement provided plaintiffs with a minimum 21-day rescission option, rather than imposing the arbitration provision on a "take it or leave it" basis.  More importantly, the facts alleged do not suggest any deliberate scheme on Dell's part to "cheat large numbers of consumers out of individually small amounts of money."  As Dell argues in its reply brief, this case involves a claim that high-end consumer electronics were rendered inoperable by a defect.  It makes no sense to claim that Dell had a "deliberate scheme" to manufacture four computer models that did not work or that Dell would deliberately sell defective computers – under warranty – to thousands of customers.

Plaintiffs also argue that California's interests are materially greater than those of Texas, and would be more seriously impaired by an application of Texas law than would the interests of Texas be impaired by application of California law.  Although the finding that Texas law does not conflict with a fundamental policy of California puts an end to the inquiry, see Nedlloyd, 3 Cal. 4th at 466, the court will also consider, for the sake of argument, whether California has a "materially greater" interest than Texas does in the enforceability of the arbitration provision.

Plaintiff argues that the court should apply the factors set forth in Application Group, Inc. v. Hunter Group, Inc., 61 Cal. App. 4th 881 (1998), used in the "government interests"

7

analysis, to determine which state has the "materially greater" interest.  See id. at 896-99 & nn.10-11.  These factors include the place of contracting, the place of negotiation of the contract, the place of performance, the location of the subject matter of the contract, and the domicile, residence, nationality, place of incorporation and place of business of the parties.  Id. at 903-04.

The court finds that none of the "governmental interest" factors strongly favors California over Texas.  On the issues of contract formation and performance, Texas has a greater interest.  Under California law, internet or phone purchases from an out-of-California manufacturer result in "sales transpir[ing] outside of California.  Calif. State Elecs. Ass'n v. Zeos Int'l Ltd., 41 Cal. App. 4th 1270, 1277 (1996).  Moreover, while the plaintiffs are domiciled in California, Dell's principal place of business is Texas.

Finally, with regard to the question whether enforcing the law of the chosen forum (Texas) would result in a substantial injustice to the plaintiffs, see Rest. 2d, § 187, com. b, it is not clear exactly how that standard is to be applied.  The California Supreme Court refers generally to this standard in Washington Mutual and Discover, but provides no meaningful guidance as to its application.

Plaintiffs argue that substantial injustice would result if all proposed class members were "deprived of their right to invoke the laws of California designed to regulate business in California."  Plaintiffs assert that "California law provides substantial rights to consumers harmed by unfair business practices in California, rights which Texas law would not provide in this case, including the right to bring a class action," and claim that "substantial injustice would result if Dell's conduct with respect to California consumers escaped the scrutiny and consequences of California law."

This is not a convincing argument.  Plaintiffs refer to "rights" that Texas law would not provide in this case, but the only "right" they actually mention is the "right to bring a class action."  They refer to the problems that would ensue if "Dell's conduct . . . escaped the scrutiny and consequences of California law," but this is little more than hyperbole.  Plaintiffs have not made any substantive argument suggesting that enforcing the choice-of-

8

law provision would result in "substantial injustice" to plaintiffs.

## CONCLUSION

The arbitration provision in the Agreement provides for binding arbitration of "any claim, dispute, or controversy (whether in contract, tort, or otherwise, whether preexisting, present or future, and including statutory common law, intentional tort and equitable claims) between customer and Dell." The court finds that the claims raised by plaintiffs in the present action are covered by the arbitration agreement. Plaintiffs, while arguing strenuously that the arbitration provision is unconscionable under California law, and therefore unenforceable, do not contend that it is unconscionable under Texas law. Accordingly, the court finds that the motion to compel arbitration must be GRANTED.

This action is hereby STAYED. The parties shall submit a status report every six months during the pendency of the arbitration, to advise the court of their progress. The date for the hearing on the motion, previously set for February 14, 2007, is VACATED, as is the case management conference previously set for the same date.

**IT IS SO ORDERED.**

Dated: February 13, 2007

_____
PHYLLIS J. HAMILTON
United States District Judge