1
2
3
4
5
6          UNITED STATES DISTRICT COURT

7          NORTHERN DISTRICT OF CALIFORNIA

8
9
10
11
MICHAEL OMSTEAD, et al.,
12
            Plaintiffs,                    No. C 06-6293 PJH
13
      v.                                   **ORDER GRANTING REQUEST FOR**
14                                         **LEAVE TO FILE MOTION FOR**
DELL, INC.,                                **RECONSIDERATION, AND ORDER**
15                                         **DENYING RECONSIDERATION**
            Defendant.
16 _____/

17      Before the court is plaintiffs' motion for leave to file a motion for reconsideration of

18 the order granting defendant's motion to compel arbitration.  Having read the parties'

19 papers and carefully considered their arguments and good cause appearing, the court

20 hereby GRANTS the motion for leave to file a motion for reconsideration, and DENIES

21 reconsideration.

22                          **BACKGROUND**

23      Plaintiffs filed this action on October 6, 2006 as a proposed class action, and filed an

24 amended complaint ("FAC") on November 10, 2006.  Plaintiffs allege that defendant Dell,

25 Inc., deliberately manufactured defective laptop computers and sold them.  The proposed

26 class consists of "[a]ll individuals and entities in the State of California who own or have

27 owned any one or more of the following Dell Inspiron notebook computer models:  1100,

28 1150, 5100, or 5160."  FAC ¶ 41.

Plaintiffs purchased the allegedly defective computers from Dell, through its website. Each purchase was subject to a written agreement, the "Terms and Conditions." Customers were requested to check either "I agree to Dell's Terms and Conditions of Sale" or "I do not agree to Dell's Terms and Conditions of Sale." If a customer did not check the "I agree" box, the order could not be placed.

The "Terms and Conditions" provided that the purchaser could return the computer within 30 days if he/she was unsatisfied with either the computer or the agreement. Not only was the agreement on Dell's website, but Dell also sent the plaintiff a copy of the agreement with the computer.

The agreement provided that it "shall be governed by the laws of the state of Texas," and included a dispute resolution clause entitled "Binding Arbitration," stating that "any claim, dispute, or controversy . . . arising from or relating to this [a]greement, its interpretation, or the breach, interpretation or validity thereof, . . . Dell's advertising, or any related purchase shall be resolved exclusively and finally by binding arbitration administered by the National Arbitration Forum."

The arbitration clause also provided that "[t]he arbitration will be limited solely to the dispute or controversy between the customer and Dell," and that neither the customer nor Dell "shall be entitled to join or consolidate claims by or against other customers, or arbitrate any claim as a representative or class action . . . ."

In the FAC, plaintiffs assert claims under the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq. ("CLRA"), and the Unfair Practices Act, Cal. Bus. & Prof. Code §§ 17200 and 17500; and also allege fraudulent concealment/nondisclosure; breach of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791, et seq.; breach of express warranty; breach of implied warranty; and unjust enrichment.

On December 22, 2006, Dell filed a motion to compel arbitration. Under the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA"), the question whether an agreement to arbitrate is valid is governed by state law. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Where an arbitration agreement contains a choice-of-law clause, the

court must apply the appropriate analysis to determine which state's laws govern the validity of the agreement to arbitrate. Federal courts sitting in diversity look to the law of the forum state in making a choice-of-law determination. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).

Thus, the complaint in the present action having been filed in California, California's choice-of-law rules apply. In deciding whether to enforce a contractual choice-of-law provision, California courts follow Restatement (Second) of Conflict of Laws ("Restatement") § 187(2), which reflects a strong policy favoring the enforcement of such provisions. Nedlloyd Lines B.V. v. Superior Court, 3 Cal. 4th 459, 464-65 (1992). Those policy considerations apply equally to all contracts, including consumer contracts of adhesion. Washington Mut. Bank v. Superior Court, 24 Cal. 4th 906, 918 (2001).

Under this analysis, the court must first determine whether the chosen state has a substantial relationship to the parties or their transaction, or whether there is any other reasonable basis for the parties' choice of law. If either of these tests is met, the court must decide whether the chosen state's law is contrary to a "fundamental policy" of the forum state. If there is no such conflict, the court must enforce the choice-of-law provision. If there is such a conflict, the court must then determine whether the forum state has a materially greater interest than the chosen state in the determination of the particular issue. If the forum state has a materially-greater interest, the court should decline to enforce a law that is contrary to the state's fundamental policy. See Nedlloyd, 3 Cal. 4th at 466.

In this case, plaintiffs conceded that "a reasonable basis exists" for the application of Texas law. Thus, the issues remaining for the court to decide in determining which state's law applies were, first, whether Texas law (allowing class action waivers) is contrary to a fundamental policy of California; and, if so, whether California has a materially greater interest than Texas does in the determination of the particular issue. As explained above, if both conditions exist, then the choice-of-law provision should not be enforced.

On June 27, 2005, a little over a year before plaintiffs filed the present action, the California Supreme Court issued its decision in Discover Bank v. Superior Court, 36 Cal.

4th 148 (2005).  The plaintiff in that case had obtained a credit card from Discover Bank in April 1986.  The Bank's cardholder agreement provided for the application of Delaware and federal law to any dispute between the Bank and the cardholder.  In July 1999, the Bank added a provision to the agreement, requiring arbitration "in the event you or we elect to resolve any claim or dispute between us by arbitration."  The arbitration clause also precluded both sides from participating in classwide arbitration, from consolidating claims, or from arbitrating claims as a representative or a private attorney general.

In 2001, the plaintiff filed a proposed class action – Boehr v. Discover Bank (No. BC 256167, Superior Court, Los Angeles County) – alleging breach of contract and violation of Delaware consumer law.  The plaintiff asserted that the Bank had breached the cardholder agreement by imposing a late fee of $29 and finance charges when payments were received on the due date but after the Bank's undisclosed 1:00 p.m. "cut-off time."

The Bank moved to compel arbitration and to dismiss the class action pursuant to the class action waiver.  In response, the plaintiff argued that the class action waiver was unconscionable and unenforceable under California law.  The Bank asserted, however, that the FAA requires enforcement of the express provisions of an arbitration clause, including class action waivers.

The trial court initially granted the Bank's motion to compel arbitration, finding no fundamental California public policy requiring it to reject the parties' selection of Delaware law, and also finding no California public policy reason to invalidate the class action waiver. The plaintiff filed a motion for reconsideration, based on a newly-filed decision by the California Court of Appeal, Szetela v. Discover Bank, 97 Cal. App. 4th 1094 (2002).  The plaintiff asserted that the Court of Appeal had articulated a fundamental public policy basis for invalidating the class action waiver.

Szetela involved the identical Discover Bank arbitration provision that was at issue in Boehr v. Discover Bank.  The Szetela court found that the class action waiver was both

procedurally and substantively unconscionable under California law.[1]  The court held that

the class-action waiver was substantively unconscionable because it gave the advantage to

Discover Bank, in that customers such as the proposed class members would be

essentially prevented "from seeking redress for relatively small amounts of money, such as

the $29 sought by [the plaintiff]."  Id. at 1101.  The court found that this "manner of

arbitration" was harsh and unfair, and violated both the Legislature's stated policy of

discouraging unfair business practices (referring to California Business & Professions Code

§ 17200, et seq.), and the public policy of promoting judicial economy, which the court

noted is inherent in the procedural mechanism of the class action.  Id. at 1101-02.

Based on the Szetela ruling, the trial court in Boehr v. Discover Bank granted the

motion for reconsideration, and invalidated the class action waiver.  The Bank petitioned for

writ of mandate, and the Court of Appeal granted the petition.  Discover Bank v. Superior

Court, 129 Cal. Rptr. 2d 393 (2003).  Because the plaintiff failed to provide any authority to

support the contrary proposition, the Court of Appeal assumed that a valid agreement to

arbitrate had been formed.  Furthermore, the court found, that agreement was governed by

§ 2 of the FAA.  The court held that California's ability to refuse to enforce a class action

waiver as substantively unconscionable was preempted by § 2 of the FAA (agreement to

arbitrate is valid, irrevocable, and enforceable, as a matter of federal law "save upon such

grounds as exist at law or in equity for the revocation of any contract").

The California Supreme Court granted review, and issued an opinion superseding

the opinion of the Court of Appeal.  The California Supreme Court ruled that waivers of

class arbitration in consumer contracts of adhesion are unconscionable under certain

circumstances and should not be enforced – specifically, where they "operate effectively as

exculpatory contract clauses that are contrary to public policy."  Discover Bank, 36 Cal. 4th

at 161.  The court also held that Court of Appeal had erred in holding that California law

prohibiting waivers of class actions is preempted by § 2 of the FAA.

---

[1]  The court applied California law without conducting any choice-of-law analysis, as Discover Bank had not briefed the issue.  See Szetela, 97 Cal. App. 4th at 1099 n. 3.

1    With regard to the general question of the enforceability of class action waivers, the

2 court noted that the plaintiff had not pled a CLRA cause of action (and therefore had not

3 invoked the CLRA's anti-waiver provision, Civil Code § 1751[2]), and also had not sought

4 recovery under any other California statute as to which a class action remedy is essential.

5 Id. at 160.  Rather, the plaintiff had argued that class action waivers in consumer contracts

6 were generally unconscionable and invalid under California law.  Id.

7    The court declined, however, to find that all class action waivers are necessarily

8 unconscionable.  The court first observed that while class action waivers "are not, in the

9 abstract, exculpatory clauses," in certain consumer cases where the damages are often

10 small, and where "[a] company which wrongfully extracts a dollar from each of millions of

11 customers will reap a handsome profit," the class action device "is often the only effective

12 way to halt and redress such exploitation."  Id. at 161 (quotations and citations omitted).

13    Moreover, the court noted, class action waivers are "indisputably one-sided," as

14 credit-card companies, for example, do not typically sue their customers in class action

15 lawsuits.  Id. (quoting Szetela, 97 Cal. App. 4th at 1101).  The court concluded that "[s]uch

16 one-sided, exculpatory contracts in a contract of adhesion, at least to the extent they

17 operate to insulate a party from liability that otherwise would be imposed under California

18 law, are generally unconscionable."  Id.  The court concluded that

19       when the waiver is found in a consumer contract of adhesion in a setting in
         which disputes between the contracting parties predictably involve small
20       amounts of damages, and when it is alleged that the party with the superior
         bargaining power has carried out a scheme to deliberately cheat large
21       numbers of consumers out of individually small amounts of money, then, at
         least to the extent the obligation at issue is governed by California law, the
22       waiver becomes in practice the exemption of the party "from responsibility for
         [its] own fraud, or willful injury to the person or property of another."  (Civ.
23       Code § 1668.)  Under these circumstances, such waivers are unconscionable
         under California law and should not be enforced.
24
   Id. at 162-63.
25
      With regard to the Court of Appeal's conclusion that § 2 of the FAA preempts any
26

27 _____

28    [2]  Section 1751 provides that "[a]ny waiver by a consumer of the provisions in this title
   is contrary to public policy and shall be unenforceable and void."  Cal. Civ. Code § 1751.

6

California statute or state judicial policy precluding class actions, the California Supreme Court held that the principle that class action waivers are, under certain circumstances, unconscionable as unlawfully exculpatory "is a principle of California law that does not specifically apply to arbitration agreements, but to contracts generally" – that is, "it applies equally to class action litigation waivers in contracts without arbitration agreements as it does to class arbitration waivers in contracts with such agreements." Id. at 165-66.

The court remanded the case, so that the Court of Appeal could resolve the question whether the enforceability of the waiver should be governed by Delaware law, and if so, whether it would be enforceable under Delaware law.

In a decision issued on December 7, 2005, the Court of Appeal applied the choice-of-law analysis from Restatement § 187(2). See Discover Bank v. Superior Court, 134 Cal. App. 4th 886, 890-91 (2005). The court first found that Delaware had a substantial relationship to the parties because Discover Bank is domiciled in Delaware. Id. at 891. The court then considered whether enforcing the class action waiver would contravene a fundamental policy of California and whether California had a materially greater interest than Delaware in determining the issue.

The court concluded that because the plaintiff had conceded at the inception of the lawsuit that his claims would be governed by the substantive law of Delaware, not California, the "obligations at issue" were not governed by California law. Id. at 894. Thus, according to the Court of Appeal, "the Supreme Court did not conclude that, under California law, the class action waiver is unenforceable in this case. At the same time, the court did not conclude that the waiver is enforceable under California law. Rather, the court declined to decide the issue." Id.

Finally, the court found that even if enforcement of the waiver would be contrary to a fundamental policy of California, California did not have a materially greater interest in determination of the issue than Delaware did, as the plaintiff (a California resident) had asserted two claims under Delaware law (and none under California law) on behalf of a putative nationwide class, against a bank that was domiciled in Delaware. Indeed, the

court noted, Delaware's interest was demonstrably greater than California's. Id. at 894-95. Thus, because the required elements – violation of a fundamental policy, and materially greater interest – were not present, the court concluded that California law did not apply.

In its motion to compel arbitration in the present case, Dell argued that the court should apply Texas law, as provided in the "Terms and Conditions." Dell asserted that under both the FAA and Texas law, the arbitration agreement was fair and enforceable, and, in particular, argued that under Texas law, class action waivers in arbitration agreements are enforceable.

Plaintiffs opposed the motion, arguing that under California's choice-of-law analysis, Texas law should not be applied because it conflicts with fundamental policies of California law – specifically, that "take it or leave it" arbitration clauses containing class action waivers are contrary to fundamental public policy in California – and because California's interests are materially greater than those of Texas and would be more impaired by the application of Texas law than would the interests of Texas by application of California law.

Plaintiffs also argued that the arbitration clause was both procedurally and substantively unconscionable under California law and was therefore unenforceable. In the alternative, plaintiffs asserted that if the court found the arbitration agreement enforceable, it should sever the class action waiver as an unconscionable term, and order that court-supervised arbitration proceed on a classwide basis.

On February 13, 2007, the court granted Dell's motion to compel arbitration. The court found that Texas has a substantial relationship to the parties or their transaction, and that Texas law would be a reasonable choice of law. The court then considered whether the law of Texas is contrary to a "fundamental policy" of California. The court found that plaintiffs had not established that there is a fundamental policy against class action waivers in California.

The court found that under the rule articulated by the California Supreme Court in Discover Bank, the class action waiver in the present action does not conflict with fundamental California policy, because the disputes concerning the allegedly faulty

8

computers do not involve "small amounts of damages," and because the customer

agreement provided the purchasers with a 21-day rescission option. The court found no

indication in the facts alleged that Dell had engaged in a deliberate "scheme" to cheat large

numbers of consumers out of individually small amounts of money, noting that it did not

"make sense" that Dell would deliberately manufacture computers that were defective or

would deliberately sell defective computers – under warranty – to thousands of customers.

The case was stayed and the parties were directed to file a status statement in six

months. Five months later, on July 12, 2007, plaintiffs filed a request for leave to file a

motion for reconsideration. The parties have not proceeded to arbitration.

**DISCUSSION**

A.    Legal Standard

A party seeking to file a motion for reconsideration must first request leave to do so,

and "must specifically show" one of three things – either

> [t]hat at the time of the motion for leave, a material difference in fact or
> law exists from that which was presented to the Court before entry of the
> interlocutory order for which reconsideration is sought. The party must also
> show that in the exercise of reasonable diligence the party applying for
> reconsideration did not know such facts or law at the time of the interlocutory
> order; or

> [t]he emergence of new material facts or a change of law occurring
> after the time of such order; or

> [a] manifest failure by the Court to consider material facts or dispositive
> legal arguments which were presented to the Court before such interlocutory
> order.

Civ. L.R. 7-9.

To prevail on a motion for reconsideration, "a party must set forth facts or law of a

strongly convincing nature" to induce the court to change its prior decision. <u>Van Slyke v.</u>

<u>Capitol One Bank</u>, 503 F.Supp. 2d 1353, 1366 (N.D. Cal. 2007).

B.    Plaintiffs' Motion

After plaintiffs filed their motion for leave to file a motion for reconsideration, Dell

filed an opposition to the motion, and plaintiffs filed a reply to the opposition. Both sides

also requested leave to file recent decisions. In their reply, plaintiffs request the court to

United States District Court

For the Northern District of California

decide the motion for reconsideration on the papers presented. Accordingly, the court

GRANTS the motion for leave to seek reconsideration, and now rules on the motion for

reconsideration itself.

      1.     Plaintiffs' Arguments

      Plaintiffs argue that reconsideration is warranted for four reasons. First, they assert

that the court improperly placed the burden on plaintiffs to establish application of California

law, as opposed to Texas law. Plaintiffs contend that under America Online, Inc. v.

Superior Court, 90 Cal. App. 4th 1 (2001), the burden properly rested on Dell – not on

plaintiffs – to establish application of Texas law.[3]

      In America Online, the plaintiff filed a proposed class action alleging claims under

the CLRA and Business & Professions Code § 17200, alleging that defendant AOL

continued to debit former subscribers' credit cards for monthly service fees after they had

terminated their subscriptions. AOL's customer agreement contained a forum-selection

clause designating Virginia courts as the place where any claims against AOL had to be

resolved, and designating Virginia law as the governing law. AOL moved to dismiss or stay

on grounds of inconvenient forum.

      The Court of Appeal held that where a plaintiff seeks a remedy based on the CLRA,

the burden of proof regarding enforcement of a choice-of-forum clause shifts to the party

seeking enforcement. Id. at 10-11. The court concluded that because Virginia law does

not allow consumer lawsuits to be brought as class actions, and because the available

remedies are more limited than those afforded by California law, the rights of the plaintiff

and the proposed class members would be substantially diminished if they were forced to

litigate their dispute in Virginia. Id. at 11.

      Plaintiff's second argument is that June 22, 2007 decision in Gatton v. T-Mobile

USA, Inc., 152 Cal. App. 4th 571 (2007) addresses many of the key issues raised in the

---

   [3] Plaintiffs argue that the case cited by the court in the February 13, 2007, order – Lu v. Dryclean-U.S.A. of Calif., 11 Cal. App. 4th 1490 (1992) – is not controlling, as it predates America Online by ten years, and also involved a rescission claim by franchisees, rather than the consumer-law exception carved out by the court in America Online.

February 13, 2007 order, and reaches conclusions at odds with that order.  In <u>Gatton</u>, the plaintiffs (past and current subscribers to defendant T-Mobile's mobile phone service) brought a proposed class action, alleging that T-Mobile's practice of imposing a $200 fee for early termination of the contract was an unfair business practice and that the fee constituted unlawful liquidated damages.  The company's service agreement contained a mandatory arbitration provision with a class action waiver.

The court held that the arbitration agreement was at least minimally procedurally unconscionable, despite the presence of market alternatives, because it was offered on a take-it or leave-it basis.  <u>Id.</u> at 581-86.  The court also found that the class action waiver had a high degree of substantive unconscionability, because the $200 early termination fee at issue was "sufficiently small" to bring the case within the ambit of <u>Discover Bank</u>.  <u>Id.</u> at 586-88.

The court cited with approval the decision in <u>Cohen v. DirecTV</u>, 142 Cal. App. 4th 1442 (2006), where the court found that damages that might approach $1000 did not take the class action waiver in that case outside a setting in which "disputes between the contracting parties predictably involve small amounts of damages."  <u>Gatton</u>, 152 Cal. App. 4th at 587 (citing <u>Cohen</u>, 142 Cal. App. 4th at 1452).  In the present case, plaintiffs appear to be suggesting that <u>Gatton</u> (relying on <u>Cohen</u>) modified the <u>Discover Bank</u> rule so that a "small amount[ ] of damages," <u>Discover Bank</u>, 36 Cal. 4th at 162, can actually be as high as $1000, or more.

Plaintiffs contend that <u>Gatton</u> is relevant to what they characterize as a ruling in the February 13, 2007, order that the agreement at issue in the present case was not a "take it or leave it" contract because it provided the plaintiffs with a 21-day rescission period.  In <u>Gatton</u>, the court held that a contract that "relegates to the subscriber only the opportunity to adhere to the contract or reject it" is a contract of adhesion, and rejected the contention that the existence of market choice altogether negates the "oppression" aspect of procedural unconscionability.  <u>Gatton</u>, 152 Cal. App. 4th at 582-83.  Plaintiffs claim that the ruling in the February 13, 2007, order therefore conflicts with California law.

11

1    Plaintiffs' third argument is that the court improperly rejected plaintiffs' factual

2  allegations.  Relying on <u>Johnston v. Beazer Homes Texas, L.P.</u>, 2007 WL 708555, at *2

3  (N.D. Cal., March 2, 2007), plaintiffs assert that when considering a motion to compel

4  arbitration, the court is required to apply a standard similar to the federal summary

5  judgment standard; and that where such a motion is opposed on the ground that no valid

6  agreement to arbitrate was made, the court should give the opposing party the benefit of all

7  reasonable doubts and inferences that may arise.

8    Specifically, plaintiffs take issue with the statement in the February 13, 2007 order

9  that "[i]t makes no sense to claim that Dell had a 'deliberate scheme' to manufacture four

10  computer models that did not work or that Dell would deliberately sell defective computers

11  – under warranty – to thousands of customers."  February 13, 2007, Order at 7.  Plaintiffs

12  contend that the court simply adopted an argument made by Dell, thereby failing to afford

13  plaintiffs the benefit of reasonable doubts and inferences to which they are entitled.

14    Plaintiffs maintain that the complaint asserts "a deliberate fraudulent scheme by Dell

15  to knowingly manufacture and sell defective computer models that it knew would fail shortly

16  outside the warranty period."  In support, they cite the complaint, which alleges that Dell

17  deliberately failed to adequately test the computers, deliberately falsely represented that

18  the computers were free of defects and were of merchantable quality, and deliberately

19  failed to remove the faulty computers from the market.  Plaintiffs contend that the court

20  committed error by rejecting these allegations.

21    Plaintiffs' fourth argument is that the court erred in ruling that plaintiffs would lose no

22  substantive rights if Texas law were applied to this case, because they would lose only the

23  ability to utilize the procedural class action device.  They contend that the right to bring a

24  class action is not merely procedural, and that under <u>Gatton</u> and <u>Discover Bank</u>, class

25  actions may, especially in the consumer context, be inextricably linked to the vindication of

26  substantive rights.

27    2.    <u>Douglas v. U.S. District Court</u>

28    After plaintiffs filed their motion on July 12, 2007, they requested leave to file a

decision issued by the Ninth Circuit on July 18, 2007 – <u>Douglas v. U.S. District Court</u>, 495 F.3d 1062 (9th Cir. 2007). In <u>Douglas</u>, the plaintiff contracted for long distance telephone service with America Online ("AOL"). The charges were billed to his credit card. Talk America, Inc. ("Talk America") subsequently acquired the long distance service business from AOL, and added new provisions to the customer service contract, including increased service charges, a class action waiver, and a choice-of-law provision requiring application of New York law. Talk America posted the revised contract on its website, but never notified the plaintiff directly that the contract had changed.

Allegedly unaware of the changes, the plaintiff continued using Talk America's services for four years. After he became aware of the increased service charges, he filed a proposed class action in federal district court, asserting violations of the Federal Communications Act and various California consumer protection statutes. Talk America moved to compel arbitration based on the modified contract, and the district court granted the motion.

The district court determined under California's choice-of-law rules that New York had a substantial relationship to Talk America, and that New York law did not violate a fundamental policy of California; and thus, that New York law should be applied in analyzing whether the arbitration clause was unconscionable. The district court found that the arbitration provision was not procedurally unconscionable under New York law because plaintiff had a choice of other providers and therefore did not lack "meaningful choice" when he entered into the agreement. As for substantive unconscionability, the district court noted that the only challenge to the arbitration clause was to the class action waiver, and found that under New York law, class action waivers are neither unconscionable nor violative of public policy.

The Ninth Circuit granted plaintiff's petition for a writ of mandamus, and vacated the order compelling arbitration. The Ninth Circuit held that the district court had erred in holding that the plaintiff was bound by the terms of the revised contract when he had not been properly notified of the changes. <u>Id.</u> at 1067. The Ninth Circuit also stated that <u>even</u>

13

if the plaintiff had been bound by the new terms of the contract, the new terms "probably would not be enforceable in California because they conflict with California's fundamental policy as to unconscionable contracts." Id. (emphasis added).

The Ninth Circuit asserted that California's interest in "protecting the thousands of citizens in the California subclass of this class action from unconscionable contracts" was materially greater than New York's interest because Talk America was a Pennsylvania corporation with its principal place of business in Pennsylvania, not a New York corporation. Id. at 1067 n.2. The court then added that "if New York law conflicts with a fundamental policy of California, the choice-of-law provision cannot be enforced and California law would apply." Id. (emphasis added).

The court then considered whether the class action waiver was unconscionable under California law. The court first noted that it had previously found that the California Court of Appeal has "'rejected the notion that the availability . . . of substitute . . . services alone can defeat a claim of procedural unconscionability,'" based on the fact that "[i]n California, a contract can be procedurally unconscionable if a service provider has overwhelming bargaining power and presents a 'take-it-or-leave-it' contract to a customer – even if the customer has a meaningful choice as to service providers." Id. at 1068 (quoting Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1283 (9th Cir. 2006)).

With regard to the question whether the class action waiver was substantively unconscionable, the court first noted that the district court below had cited Provencher v. Dell, Inc., 409 F.Supp. 2d 1196 (C.D. Cal. 2006), for the proposition that class action waivers are not per se substantively unconscionable in California. However, the Ninth Circuit asserted, the California Court of Appeal in Cohen had "expressly disavowed Provencher." Id. (citing Cohen, 142 Cal. App. 4th at 1445 n.13). The Ninth Circuit concluded that

> [a] class action waiver provision thus may be unconscionable in California. Whether it is depends on the facts and circumstances developed during the course of litigation. . . . The district court clearly erred in holding that the clauses (assuming they are part of the contract at all) are consistent with California policy and therefore enforceable as a matter of law.

14

1   Id. Oddly, the Ninth Circuit never mentioned Discover Bank, despite the fact that it

2   was discussed by the court below.

3       The district court in Douglas noted that while Discover Bank had outlined a test to

4   determine whether a class action waiver provision is unconscionable, the California

5   Supreme Court had specifically stated that it did not hold all class action waivers to be

6   necessarily unconscionable. Douglas v. Talk America, Inc., No. CV-06-3809, slip. op. at 6

7   (C.D. Cal., filed Oct. 20, 2006) (citing Discover Bank, 36 Cal. 4th at 162). The district court

8   then added, "[S]ee also Provencher v. Dell, Inc., 409 F.Supp. 2d 1196, 1201 (C.D. Cal.

9   2006) ('In Discover Bank, the California Supreme Court made it clear that there is no

10  blanket policy in California against class action waivers in the consumer context.')

11  (emphasis added))." In other words, the district court cited Provencher only for its citation

12  of Discover Bank.

13      Provencher involved facts similar to the facts in the present case – the plaintiff

14  purchased a computer from Dell over the Internet. The purchase was subject to written

15  "Terms and Conditions" providing that the purchaser could return the computer within 30

16  days if he/she was unsatisfied with either the computer or the agreement. The agreement

17  was on the website, and Dell also sent the plaintiff a copy of the agreement with the

18  computer. The agreement included an arbitration provision containing a class action

19  waiver, and also provided that Texas law would govern any dispute.

20      The plaintiff filed a proposed class action alleging numerous causes of action,

21  primarily based on Dell's alleged failure to repair plaintiff's computer to his satisfaction.

22  Unlike the present case, the plaintiff sought certification of a nationwide class, and all but

23  one of the state law claims were brought under Texas law.

24      The district court found that enforcing Texas law would not violate a fundamental

25  policy of California. Provencher, 409 F.Supp. 2d at 1201. The court cited the standard set

26  forth in Discover Bank, and found that the plaintiff had "put forth no evidence to suggest

27  that this case involves such a small amount of money and fraudulent avoidance of liability

28  on the part of Dell." Id. at 1201-02 (citing Discover Bank, 36 Cal. 4th at 162-63).

15

First, the court found that the computer purchased by the plaintiff was not "an essential consumer good," and noted as well that the plaintiff could have purchased a computer from numerous other retailers and manufacturers. Id. at 1202. Further, the court found, the plaintiff's claims did not involve a small amount of money – the plaintiff had paid $1600 for the computer, including more than $250 for the extended warranty; and he alleged numerous claims and sought compensatory and punitive damages, in addition to attorney's fees. Id. In a footnote, the court added that the total damages sought would be considerable – hundreds of millions of dollars – in light of the fact that the plaintiff had filed the suit on behalf of 500,000 purchasers of Dell computers. Id. at 1202 n.7.

The court also found that the facts in the case before it did not resemble the facts the California Supreme Court had found so troubling in Discover Bank – where the plaintiff credit cardholder had alleged that the Bank had engaged in a deceptive practice of representing to cardholders that late payment fees would not be assessed if payment was received by a certain date, when, in actuality, the Bank assessed late fees if payment was received after 1:00 p.m. on that date, thereby leading to minimal damages of approximately $29 as to each affected individual cardholder. Id. at 1203 citing Discover Bank at 152)..

The court noted that the California Supreme Court had found that the Bank had abused its superior bargaining power to carry out a "scheme," through the class action waiver, to deliberately cheat large numbers of consumers out of individually small amounts of money – and that the class action waiver was an exculpatory provision in violation of California public policy because the Bank, by design, was granting itself both a license to push the boundaries of good business practices to their furthest limits and immunity from any wrongdoing. Id. (citing Discover Bank at 153).

In contrast to the arbitration provision and class action waiver in Discover Bank, the Provencher court found that the arbitration provision and class action waiver in the case before it did not act to exempt Dell from the consequences of its alleged wrongdoing, but simply limited the means by which the plaintiff could enforce his substantive rights against Dell. Id. at 1203-04. Accordingly, the court found that the arbitration provision and class

1   action waiver did not violate a fundamental policy of California, and that Texas law applied.

2   Id.

3          In Cohen, a subscriber to DirecTV's satellite television service filed a proposed class

4   action alleging that DirecTV's covert degradation of certain high-definition transmissions

5   violated the CLRA and the UCL.  The plaintiff sought damages for costs of equipment and

6   monthly subscription fees, restitution, and an injunction.  DirecTV moved to compel

7   arbitration under the provision in the customer agreement, which also prohibited class

8   litigation of claims in arbitration.  The Court of Appeal found the prohibition on class

9   litigation to be unconscionable and unenforceable, under the guidelines set by Discover

10  Bank.

11         First, the court found that the customer agreement at issue was a "consumer

12  contract of adhesion" – as in Discover Bank, the plaintiff was "given an amendment to [his

13  customer] agreement in the form of a 'bill stuffer.'"  Cohen, 142 Cal. App. 4th at 1451

14  (quoting Discover Bank, 36 Cal. 4th at 160).  Similarly, the plaintiff was "'deemed to accept

15  [it]' if he did not close his account.'"  Id.

16         Second, the Cohen court found that "customer agreements with television

17  programming providers, like other consumer contracts of adhesion, necessarily occur 'in a

18  setting in which disputes between the contracting parties predictably involve small amounts

19  of damages.'"  Id. at 1452 (quoting Discover Bank, 36 Cal. 4th at 162).  The court noted that

20  DirecTV's fee for its high-definition services was $10.95 a month, and that the contracts

21  impose additional fees in small amounts.

22         The court added, however, that even if one considered the value of DirecTV's high-

23  definition package – which could amount to as much as $1000 ("not an insignificant sum") –

24  this additional element of damages did not "affect[ ] the foundational premise that DirecTV's

25  class action waiver occurs in a setting where disputes between the contracting parties

26  'predictably involve small amounts of damages.'"  Id.  The court concluded that "[d]amages

27  that may or may not exceed $1000 do not take DirecTV's class action waiver outside 'a

28  setting in which disputes between the contracting parties predictably involve small amounts

1   of damages." <u>Id.</u>

2       Third, the <u>Cohen</u> court found that the class action waiver was unconscionable

3   because the plaintiff alleged that the party with the superior bargaining power (DirecTV)

4   had "'carried out a scheme to deliberately cheat large numbers of consumers out of

5   individually small amounts of money.'" <u>Id.</u> (quoting <u>Discover Bank</u>, 36 Cal. 4th at 1652-63).

6   The court noted that DirecTV had represented its high-definition package as providing

7   "astonishing picture clarity," but then had reduced its HDTV transmission quality by 33%.

8   The court concluded that the customers were being deliberately cheated, because they

9   were paying for something (HDTV) they were not receiving.

10      Following this analysis of the <u>Discover Bank</u> requirements, the <u>Cohen</u> court stated in

11  a footnote that it did not find the <u>Provencher</u> court's analysis "compelling" because of its

12  conclusion that the amount of class-wide damages could reach a significant amount –

13  hundreds of millions of dollars – because the <u>Provencher</u> court had "focused on aggregate

14  amounts, not individual amounts." <u>Cohen</u>, 142 Cal. App. 4th at 1455 n.13.

15      It was this statement in <u>Cohen</u> that led the Ninth Circuit in <u>Douglas</u> to suggest that

16  the California Court of Appeal had "disapproved" <u>Provencher</u> – which is true only in a

17  limited sense.  Moreover, the <u>Douglas</u> court omitted to state that <u>Cohen</u> also distinguished

18  <u>Provencher</u> on the basis that the plaintiff there had "entered into his transaction with full

19  knowledge of its terms, and indeed with a 30-day rescission option, rather than having the

20  class action waiver presented by means of amendment as a 'take it or leave it' bill stuffer"

21  (as in <u>Cohen</u> and also in <u>Discover Bank</u>.)  <u>See</u> <u>Cohen</u>, 142 Cal. App. 4th at 1455 n.13.  In

22  other words, there was significantly less procedural unconscionability in <u>Provencher</u> than

23  the <u>Cohen</u> court found in the case before it.

24      3.    Dell's Opposition

25      In its opposition, filed July 27, 2007, Dell contends that reconsideration should be

26  denied because plaintiffs have not established a change in law since the time of the

27  February 13, 2007, ruling – asserting in particular that neither the <u>Gatton</u> nor the <u>Douglas</u>

28  decisions announce any new or changed law or suggest any different outcome in this case,

18

1   and that plaintiffs' arguments regarding the issues of burden of proof and pleading

2   requirements are incorrect and also were never previously presented to the court as

3   required by Local Rule 7-9(b).

4       Dell's first argument is that <u>Gatton</u> does not announce a change in the law.  Dell

5   asserts that in holding that T-Mobile's service agreement was a "take-it or leave-it" contract,

6   the <u>Gatton</u> court did not consider what effect a rescission period would have had on that

7   conclusion.  Moreover, Dell notes, the <u>Gatton</u> court favorably cited the <u>Cohen</u> decision –

8   which had expressly distinguished the situation where a consumer had time to reconsider

9   and rescind its purchase agreement.  <u>Cohen</u>, 142 Cal. App. 4th at 1455 n.13.  Thus, Dell

10  asserts, the February 13, 2007, order does not conflict with <u>Gatton</u>.

11      Dell also contends that the holding that the $200 early termination fee in <u>Gatton</u> was

12  "sufficiently small" does not mandate a finding that the damages here – approximately

13  $1,500 plus statutory damages and civil penalties and attorney's fees – are sufficiently

14  small to be governed by the rule in <u>Discover Bank</u>.

15      Dell argues further that the <u>Gatton</u> court's citation to <u>Discover Bank</u> (for the

16  proposition that class action waivers that effectively exculpate defendants from alleged

17  fraud may be unenforceable) does not conflict with the court's opinion here, because

18  <u>Gatton</u> merely applied <u>Discover Bank</u> to the facts before it, and because this court carefully

19  considered <u>Discover Bank</u> when it entered the order compelling arbitration in this case.

20      Dell's second argument is that <u>Douglas</u> did not announce a change in the law.  Dell

21  contends that this court's analysis is consistent with <u>Douglas</u>, noting that this court

22  recognized that California has a "limited policy" against class action waivers, and that it

23  distinguished that limited policy on the grounds that the plaintiffs here had damages that

24  were not "small," that they were given 21 days to reconsider, and that plaintiffs' own

25  allegations did not describe the type of deliberate scheme found in <u>Discover Bank</u> to be

26  intended to cheat large numbers of customers out of individually small amounts of money.

27      Dell notes further that <u>Douglas</u> did not overrule <u>Provencher</u>, a case that was also

28  cited in the February 13, 2007, order.  <u>Douglas</u> simply remarked that <u>Cohen</u> had

"disapproved" Provencher.  Dell points out in addition that the Provencher court also discussed the plaintiff's individual damages when doing its Discover Bank analysis, and didn't base its conclusion on the amount of the aggregate class damages.

Dell's third argument is that plaintiffs did not previously present the court with any argument or authority on the burden of proof for the choice of law question.  In particular, Dell asserts, plaintiffs did not make the argument in their opposition to Dell's motion to compel arbitration that under AOL v. Superior Court, the burden of proof on the choice of law issue should have been shifted to Dell because of the presence of CLRA claims in the case.  Thus, Dell submits, the issue cannot properly be presented to the court on a motion for reconsideration.

Moreover, Dell asserts, plaintiffs have failed to explain what difference the burden of proof issue makes in terms of changing the outcome of this matter, as the February 13, 2007, order was based on a review of plaintiffs' allegations, a review of the holding in Discover Bank, and the undisputed facts regarding the parties' residences and transactions.

Dell contends that even if plaintiff had properly raised the issue, it would not change the outcome here.  Plaintiffs argue in their opposition that under America Online, the traditional burden of proof regarding enforcement of a choice of law clause shifts to the party seeking its enforcement when there is a CLRA claim in the case.  But, Dell notes, the ruling in America Online was directed to the forum-selection clause, not the choice-of-law clause.  Thus, the Court of Appeal did not apply Restatement § 187(2), the test applied to questions of enforcement of choice-of-law provisions.

In addition, Dell asserts, America Online did not involve an arbitration provision or the limits the FAA places on judicial consideration of non-arbitration merits issues.  Dell notes that the Ninth Circuit held in Ting v. AT&T, 319 F.3d 1126 (9th Cir. 2003) that because the CLRA applies only to "consumer contracts," and not to "any contract," the FAA preempts consideration of the CLRA's anti-waiver provision, Civil Code § 1751, in the context of evaluating the enforceability of an arbitration provision with a class waiver.

In <u>Ting</u>, which preceded <u>Discover Bank</u> by two years, the plaintiffs alleged that certain provisions AT&T had added to its consumer services agreement violated the CLRA – in particular, the provision mandating binding arbitration of disputes against AT&T and barring customers from pursuing claims against AT&T on a classwide basis. The district court found the "remedies" provisions of the consumer services agreement unconscionable. AT&T appealed, arguing (among other things) that the application of California's consumer laws was preempted by the FAA.

The Ninth Circuit first noted that federal courts should enforce state law contract defenses when considering the validity or enforceability of arbitration provisions, but only when those defenses are "<u>generally applied</u> to all contracts, and not limited to arbitration clauses." <u>Ting</u>, 319 F.3d at 1148 (citation and quotation omitted). The court held that despite the fact that in barring class-action lawsuits, the consumer services agreement violated the express terms of the CLRA, application of the anti-waiver provision (Civil Code § 1751) was nonetheless preempted by the FAA because the CLRA does not apply to all contracts, but only to consumer contracts, and is therefore not a "law of general applicability." <u>Id.</u> at 1147-48. Similarly, Dell argues, the FAA in this case preempts consideration of Civil Code § 1751 in any evaluation of whether Dell's class action waiver violates fundamental public policy under California law.

Dell's final argument is that plaintiffs did not previously present argument regarding the legal standard applicable to the allegations in the complaint. Dell asserts that the case plaintiffs rely on in support of their argument that the applicable standard is the standard applied in motions for summary judgment – <u>Johnston v. Beazer Homes</u> – actually holds that the summary judgment standard applies only where the motion to compel arbitration is "opposed on the ground that no valid agreement to arbitrate was made." <u>See</u> <u>Johnston</u>, 2007 WL 708555, at *2.

    4.    Plaintiffs' Reply

In their reply, filed August 1, 2007, plaintiffs contend that several of Dell's arguments are misleading. First, they take issue with Dell's assertion that <u>Johnston</u> is inapplicable

here because it governs situations in which the validity of an arbitration clause is in dispute, not its enforceability. Plaintiffs assert that the question whether an arbitration clause is valid or not is precisely the question at issue in the unconscionability analysis as to its enforceability.

Plaintiffs agree that they do not dispute the <u>existence</u> of an arbitration clause in Dell's service contract. But, they argue, the question whether that clause is valid is determined by whether or not it is enforceable. For example, they note that in <u>Douglas</u>, the Ninth Circuit applied the well-known rule that in evaluating the validity of an arbitration clause, the court must apply ordinary state law defenses to contract formation, including the doctrine of unconscionability, to determine whether or not it is enforceable. <u>Douglas</u>, 495 F.3d at 1067 n.2.

With regard to Dell's contention that the arbitration provision is not procedurally unconscionable because the customer has 21 days to rescind the agreement, plaintiffs assert that it is still a "take it or leave it" proposition. They also argue that under <u>Gatton</u>, the fact that a customer might be able to buy a computer from another manufacturer is not determinative. <u>See</u> <u>Gatton</u>, 152 Cal. App. 4th at 583-85. They suggest that a true alternative would be to allow customers to remain customers but still opt out of arbitration requirements.

With regard to Dell's argument that plaintiffs failed to address the issue of who bears the burden of establishing choice of law, they assert that this issue was not raised until Dell's reply in support of the motion to compel arbitration, where plaintiffs claim that Dell argued for the first time that plaintiffs had failed to demonstrate that California has a materially greater interest than Texas. However, they do not respond to the substance of Dell's argument on this issue.

Finally, with regard to Dell's assertion that the FAA preempts the holding of <u>America Online</u> – that the burden is shifted to Dell because of the presence of the CLRA claims in the case – plaintiffs argue that the FAA preempts only those rules of law that apply solely to arbitration clauses as opposed to all contracts. They contend that because the holding in

America Online had nothing to do with an arbitration provision, and the court applied the burden-shifting rule in the context of an ordinary contract analysis of a choice- of-forum clause, there can be no preemption.

At the conclusion of their reply brief, plaintiffs again request leave to file a motion for reconsideration, or, in the alternative, "now that the parties have briefed the issues," request that the court simply grant the motion to reconsider.

5.      Subsequent Filings

Plaintiffs filed four additional requests during the month of August 2007, seeking leave to file recent decisions. Dell filed a response that addresses the first three of those requests. In October 2007, Dell also filed a request for leave to file a recent decision. The court has considered all these recent decisions, and the requests are GRANTED.

a.      Brazil v. Dell

On August 6, 2007, plaintiffs requested leave to file the decision in Brazil v. Dell, Inc., 2007 WL 2255296 (N.D. Cal., Aug. 3, 2007). In Brazil, two individuals who purchased Dell computers online through Dell's website filed a proposed class action alleging that the discounts offered to them when they purchased the computers were falsely advertised, as they were discounts from prices higher than those that were normally offered for the "discounted" items. In other words, the purported "discount" was really no discount because Dell had raised the price before applying the discount. Plaintiffs asserted claims under the CLRA, and Business & Professions Code §§ 17200 and 17500.

As in the present case, the purchase was governed by "Terms and Conditions" containing an arbitration provision, a class action waiver, and a provision designating Texas law as the governing law. Dell moved to compel arbitration, and plaintiffs argued that the choice-of-law provision was invalid because applying Texas law would conflict with California's fundamental policy of protecting consumers from the oppressive use of superior bargaining strength and the false advertising alleged in the complaint.

The court analyzed the class action waiver under Discover Bank, and found that the agreement was a contract of adhesion under California law; that plaintiffs had alleged that

23

Dell (the party with superior bargaining power) had carried out a scheme to deliberately cheat large numbers of consumers; and that the amount of damages the plaintiffs claimed were small – only the amount of the cost to them of the alleged inflation of the price from which the discounts were taken from the usual price of the discounted item – an amount the court estimated to be, at most, "a few hundred dollars." Id. at *5-7.   Based on this analysis, the court found that "it appears that Texas law conflicts with California public policy in the circumstances presented by this case." Id. at *7.

The court then considered whether the arbitration clause was unconscionable under California law, and found that it was both minimally procedurally unconscionable, and substantively unconscionable.  The court indicated, however, that since the inquiry whether a class action waiver provision will be considered unconscionable in California "is a fact-specific, case-by-case inquiry," id. at *4 (citing Discover Bank, Cohen, and Douglas), the denial of the motion to compel arbitration would be without prejudice to renewing the motion "should facts or circumstances develop that would materially impact this court's assessment of the application of the principles articulated by Discover Bank," id. at *8.

b.    Oestreicher v. Alienware

On August 13, 2007, plaintiffs requested leave to file the decision in Oestreicher v. Alienware Corp., 502 F.Supp. 2d 1061 (N.D. Cal., 2007).  In Oestreicher, the plaintiff purchased a $4,149 laptop computer from defendant Alienware via the company's website, and subsequently filed a proposed class action alleging that Alienware had made misrepresentations and concealed material information in its sale of computers it knew to be defective.  Plaintiff asserted claims under the CLRA and Business & Professions Code §§ 17200 and 17500, and also alleged claims of breach of warranty and unjust enrichment.

Alienware's "Terms and Conditions" contained an arbitration provision and a class action waiver, and provided that Florida law would govern any disputes concerning the Terms and Conditions or sales of the computer.  Alienware moved to compel arbitration, and plaintiff argued that the arbitration provision was unconscionable because of the class action waiver.  The court denied the motion, finding that the class action waiver was

24

1    unconscionable because the facts met <u>Discover Bank</u>'s three criteria.

2        First, the court found that the contract was presented on a "take it or leave it" basis.

3    <u>Id.</u> at 1067.  Second, with regard to the amount of damages, the court noted that the Court

4    of Appeal in <u>Cohen</u> had rejected the proposition that sums exceeding $1000 necessarily fall

5    outside the framework of <u>Discover Bank</u>, and also had rejected the reasoning in

6    <u>Provencher</u> regarding the amount of recovery.  Based on <u>Cohen</u>, the court found that the

7    $4,149 that the plaintiff paid for his computer was within the <u>Discover Bank</u> limit.  <u>Id.</u> at

8    1067-68.  Finally, the court found that the complaint alleged that Alienware had acted

9    deliberately to deprive consumers of money, in that Alienware was alleged to have been

10   aware of defects in its products, concealed those defects from consumers, and chose to

11   sell defective products rather than correcting the defects.  <u>Id.</u> at 1068.

12       c.    <u>Shroyer v. New Cingular</u>

13       On August 20, 2007, plaintiffs requested leave to file the decision in <u>Shroyer v. New</u>

14   <u>Cingular Wireless Servs., Inc.</u>, 498 F.3d 976 (9th Cir. 2007).  In <u>Shroyer</u>, the plaintiff filed a

15   proposed class action against New Cingular Wireless Services and AT&T, alleging that he

16   and the members of the proposed class had suffered injuries as a result of the 2004 merger

17   between Cingular Wireless and AT&T Wireless, which had created New Cingular Wireless

18   Services.

19       The plaintiff asserted that when the two companies merged, the services received by

20   AT&T's customers deteriorated, and that Cingular then attempted to induce AT&T's

21   customers to transfer their service plans and equipment from AT&T to Cingular in order to

22   boost Cingular's profits.  In particular, he claimed that when customers complained about

23   problems associated with their service plans, they were told that they could get a new

24   "chip" that would solve the problems, but only if they extended their current contracts with

25   Cingular.  Plaintiff asserted claims under the CLRA and Business & Professions Code

26   §§ 17200 and 17500, and also asserted claims of breach of contract, breach of the implied

27   covenant, fraud, and unjust enrichment.

28       The plaintiff's new service agreement with Cingular included an arbitration provision

and a class action waiver, but apparently no choice-of-law provision. Cingular moved to compel arbitration and to dismiss the action, and the district court granted the motion. The court found that plaintiff had not met his burden of establishing both procedural and substantive unconscionability; that plaintiff had not shown that the arbitration provision operated to insulate Cingular from liability; that the challenge to the arbitration provision was preempted by § 2 of the FAA; and that the FAA preempted the CLRA's anti-waiver provision as applied to arbitration provisions. See Shroyer v. New Cingular Wireless Services, Inc., No. CV-06-1792, slip op. at 3-7 (C.D. Cal., filed May 26, 2006).

Shroyer is significant because it is the first reported Ninth Circuit decision to apply the Discover Bank standard in an analysis of whether a class action waiver in an arbitration provision is unconscionable. Previously, in Ting v. AT&T and Ingle v. Circuit City Stores, Inc., the Ninth Circuit had ruled that any bar on class actions in an arbitration agreement would be unconscionable under California law because it would be an essentially unilateral bar (as the class action device is used by consumers or employees against companies, but not by companies against consumers or employees). Ting, 319 F.3d at 1150; Ingle, 328 F.3d 1165, 1175-76 (2003).

In Shroyer, the Ninth Circuit held that the arbitration provision was both procedurally and substantively unconscionable because of the class action waiver. The court found that the Discover Bank requirements were satisfied – Cingular's agreements were consumer contracts of adhesion, presented on a "take it or leave it" basis; the agreements "occurred in a setting in which disputes between the contracting parties predictably involve small amounts of damages," as the claims involved "individual damages in the hundreds of dollars, an objectively small amount, and a smaller amount than the $1,000 amount that the Court of Appeal in Cohen had found to be a small enough sum to satisfy the second element of the Discover Bank test;" and the complaint alleged that the party with the superior bargaining power had carried out a scheme to cheat large numbers of customers out of individually small sums of money. Shroyer, 498 F.3d at 983-84 (quotations and citations omitted).

26

1            d.     Dell's response to plaintiffs' requests

2         On August 23, 2007, Dell filed a response to plaintiffs' requests for leave to file the

3    <u>Brazil</u>, <u>Oestreicher</u>, and <u>Shroyer</u> decisions.

4         Dell argues that the reasoning in <u>Brazil</u> does not mandate a different outcome in the

5    present case.  Dell notes that in <u>Brazil</u>, the court stated that it did not hold that a class

6    action waiver provision would be considered unconscionable under circumstances <u>other</u>

7    <u>than</u> the ones presented in that case, and also noted that other courts had held the class

8    action waiver provision in Dell's agreement to be enforceable in circumstances involving

9    warranty claims.  The court added that its decision was not intended to address or to apply

10    to the facts or circumstances of those cases (including the present case).

11         As for <u>Oestreicher</u>, Dell notes only that the order denying the motion to compel

12    arbitration is being appealed to the Ninth Circuit.  (Case No. 07-16531, appeal docketed

13    August 28, 2007).

14         Finally, Dell asserts that <u>Shroyer</u> does not undermine any part of the court's previous

15    order compelling arbitration, as the Ninth Circuit found that the circumstances of that case

16    "cannot be distinguished from <u>Discover Bank</u>," <u>Shroyer</u>, 498 F.3d at 983, while the

17    February 13, 2007, order in the present case distinguished the facts from the facts in

18    <u>Discover Bank</u>.  Dell also contends that <u>Shroyer</u> is plainly distinguishable from the present

19    case in that <u>Shroyer</u> did not raise any choice-of-law issues, as both parties agreed that

20    California law controlled.

21            e.     Gentry v. Superior Court

22         On August 30, 2007, plaintiffs requested leave to file the decision in <u>Gentry v.</u>

23    <u>Superior Court</u>, 42 Cal. 4th 443 (2007).  In <u>Gentry</u>, a retail store manager filed a proposed

24    class action against his employer, Circuit City Stores, Inc. ("Circuit City"), seeking damages

25    for conversion and statutory violations for the alleged failure to pay overtime compensation.

26    Circuit City filed a motion to compel arbitration.

27         The question before the California Supreme Court was whether class arbitration

28    waivers in employment arbitration agreements may be enforced to preclude class

1   arbitrations by employees who allege that their statutory rights to overtime pay under the

2   California Labor Code have been violated.

3           The first time <u>Gentry</u> came before the California Supreme Court, the court remanded

4   it to the Court of Appeal for reconsideration in light of <u>Discover Bank</u>.  The Court of Appeal

5   ruled against the plaintiff, and distinguished the class action waiver at issue in <u>Discover</u>

6   <u>Bank</u> from the one at issue in the case before it, on two principal grounds – the employee

7   who chose arbitration had to agree to a class-action waiver, but the employee agreement

8   gave the employee 30 days to opt out of any agreement to arbitrate; and the class action

9   waiver did not involve "predictably . . . small amounts of damages."  <u>Id.</u> at 452.

10          When the case came back to the California Supreme Court, the court granted review

11  "to clarify our holding in <u>Discover Bank</u>."  <u>Id.</u>  The court noted that "we had no occasion in

12  <u>Discover Bank</u> to consider whether a class action or class arbitration waiver would

13  undermine the plaintiff's statutory rights."  <u>Id.</u> at 455.

14           The court discussed <u>Discover Bank</u> at some length, noting that it had held in that

15  case that at least under some circumstances, the law in California is that class action

16  waivers in consumer contracts of adhesion are unenforceable as unconscionable.  <u>Id.</u> at

17  453.  Based on the standard articulated in <u>Discover Bank</u>, the court also found that class

18  action waivers in overtime cases might under some circumstances "lead to a de facto

19  waiver" and would therefore "impermissibly interfere with employees' ability to vindicate

20  unwaivable rights and to enforce the overtime laws."  <u>Id.</u> at 457.

21          Turning to the case before it, the court found that the statutes at issue provided

22  unwaivable rights to legal minimum wage and legal overtime compensation.  The court

23  repeated the often-quoted passage from <u>Discover Bank</u> – that while not all class action

24  waivers are unconscionable, waivers in consumer contracts of adhesion involving

25  "predictably . . . small amounts of damages" that are part of a "scheme to deliberately cheat

26  large numbers of consumers out of individually small sums of money" will be held to be

27  unconscionable and unenforceable.  <u>Id.</u> at 457 (citing <u>Discover Bank</u>, 36 Cal. 4th at 162-

28  63).

The court added, however, that this passage from <u>Discover Bank</u> "was not intended to suggest that consumer actions involving minuscule amounts of damages were the only actions in which class action waivers would not be enforced." <u>Id.</u> Rather, the court stated,

> <u>Discover Bank</u> was an application of a more general principle: that although "[c]lass action and arbitration waivers are not, in the abstract, exculpatory clauses," such a waiver can be exculpatory in practical terms because it can make it very difficult for those injured by unlawful conduct to pursue a legal remedy.

<u>Id.</u> (quoting <u>Discover Bank</u>, 36 Cal. 4th at 161). The court found that class action waivers in wage and hour cases would, "at least frequently, if not invariably," have an exculpatory effect similar to the one described under the facts of <u>Discover Bank</u> "because it can make it very difficult for those injured by unlawful conduct to pursue a legal remedy." <u>Id.</u>

Specifically, the court found that class action waivers in wage and hour cases might have an exculpatory effect for three reasons – first, individual awards in wage and hour cases tend to be "modest;" second, a current employee who individually sues his employer is at greater risk of retaliation, as in any type of employment-related litigation; and third, some individual employees might not sue because they were unaware that their legal rights had been violated. <u>Id.</u> at 457-62.

The court added that "class actions may be needed to assure the effective enforcement of statutory policies even though some claims are large enough to provide an incentive for individual action," particularly where individual suits through the Labor Commissioner "offer no more than the prospect of "random and fragmentary enforcement" of the employer's legal obligation to pay overtime." <u>Id.</u> at 462 (citation and quotation omitted).

Despite all this, however, the court refused "to say categorically that all class arbitration waivers in overtime cases are unenforceable." <u>Id.</u> The court simply ruled that in a case where it is alleged that an employer has systematically denied overtime pay to a class of employees and a class action is sought despite the presence of an arbitration agreement that contains a class action waiver, the trial court must consider the factors set forth above – the modest size of the potential individual recovery, the potential for

29

retaliation against members of the class, the fact that absent members of the class may not be adequately informed of their rights, and "other real world obstacles to the vindication of class members' right to overtime pay through individual arbitration." Id. at 463.

Finally, the court addressed Circuit City's argument that the fact that an employee would have 30 days to opt out of the arbitration agreement meant that the terms of the agreement, including the class action waiver, were not procedurally unconscionable and were therefore enforceable. The court first noted that the analysis in the earlier part of the decision focused on the class action waiver in terms of unwaivable statutory rights, rather than unconscionability. Id. at 466-67.

The court then stated that "[b]ecause the statutory rights . . . at issue in this case are not waivable, the minimal requirements imposed on arbitration agreements to ensure their vindication cannot be waived by the employee in a prelitigation agreement." Id. at 467. Such a waiver can occur only when the employer and the employee enter into an arbitration agreement after a dispute has arisen, when the employee will be fee to determine what trade-offs between arbitral efficiency and formal procedural protections will best safeguard their statutory rights. Id.

The court concluded that the agreement was not free of procedural unconscionability, despite the presence of the opt-out provision, and noted that the agreement arguably had other elements of procedural unconscionability. The court remanded the case to the Court of Appeal, with directions to remand to the trial court to determine whether the class arbitration waiver was void; and whether the controlling arbitration agreement had any terms that were substantively unconscionable; and if so, whether those terms should be severed or whether the entire arbitration agreement should be invalidated.

f.     Carideo v. Dell

On October 17, 2007, Dell requested leave to file the decision in Carideo v. Dell, 520 F.Supp. 2d 1241 (W.D. Wash. 2007) ("Carideo II"). Carideo was filed as a proposed class action, and involved facts and claims similar to the ones alleged here. The plaintiffs had

30

purchased Dell computers, which they claimed were defective in violation of Washington's

Consumer Protection Act.  It appears that the same form of "Terms and Conditions" was at

issue in that case as is at issue in the present case.  See Carideo v. Dell, Inc., 492 F.Supp.

2d 1283 (W.D. Wash. 2007) ("Carideo I").

As is true under California law, courts in the State of Washington follow Restatement

§ 187(2) and will uphold express choice-of-law clauses in contracts so long as the

application of the chosen law does not violate a fundamental public policy of Washington.

Id. at 1287.  Thus, the question was whether the choice of Texas law and Texas' allowance

of class action waivers was unconscionable because it violated a fundamental Washington

policy.

The court held that the class action provision did not violate the public policy of

Washington.  The court noted that under the Restatement, "fundamental public policy" is

generally found in legislative enactments declaring certain types of contracts illegal, and

found that plaintiffs had cited no statutory language that declares invalid under Washington

law arbitration agreements barring class action relief.  Id. (citing Restatement § 187, cmt.

g).  Moreover, the court found that Washington courts were divided on the treatment of the

interplay between class action waivers and public policy favoring arbitration of disputes,

suggesting that Washington law was currently in a state of flux.  Id. at 1287-88.

The plaintiffs moved for reconsideration, and on October 15, 2007, the court denied

the motion.  The court first noted that since the time the decision in Carideo I had been

issued, the Washington Supreme Court had ruled that a class action waiver contained in

Cingular Wireless' consumer arbitration agreement violated the public policy in

Washington's Consumer Protection Act and improperly exculpated Cingular from wrongful

conduct.  Carideo II, 520 F.Supp. 2d at 1243 (citing Scott v. Cingular Wireless, 160 Wash.

2d 843, 161 P.2d 1000 (2007)).

In the motion for reconsideration, the Carideo plaintiffs argued that under Scott, a

class-action waiver of the type in the Dell customer agreement is unconscionable and

therefore unenforceable as a matter of Washington's fundamental policy.  The court

disagreed, asserting that <u>Scott</u> requires the court to examine the enforceability of a class-action waiver given the totality of the circumstances, and finding that enforcing the class action waiver under Texas law would not be contrary to a fundamental policy of Washington, as the agreement was neither substantively nor procedurally unconscionable under Washington law. <u>Id.</u>

The court first looked at substantive unconscionability. The court noted that <u>Scott</u> had found that class-action waiver in Cingular's arbitration agreement to be substantively unconscionable because it undermined the state's policy of protecting consumers, which is embedded in its Consumer Protection Act; and because it undermined the public good by exculpating the drafter from liability for a large class of wrongful conduct. <u>Id.</u> at 1246. The court cited <u>Scott</u> for the proposition that "'[a] company which wrongfully extracts a dollar from each of millions of customers will reap a handsome profit; the class action is often the only effective way to halt and redress such exploitation.'" <u>Id.</u> (quoting <u>Scott</u>, 161 P.2d at 1006).

By contrast, the court found, the class action waiver in Dell's agreement did not prevent the plaintiffs from vindicating their substantive rights, because, unlike the "trivial" fees at issue in <u>Scott</u>, the plaintiffs in the case before it alleged actual damages of between $1300 and $1700, plus statutory and punitive damages, interest, and attorney's fees. <u>Id.</u> at 1246-47. The court noted that the plaintiffs had purchased "high-end consumer electronics under warranties with a 21-day rescission option that were rendered inoperable by an allegedly apparent defect," and found "no danger that the amount in controversy" was "so small or the injury so insignificant that similarly situated individuals might not realize they have a claim at all." <u>Id.</u> at 1247. In considering whether the costs of pursuing individual claims might outweigh the benefits of arbitration under the NAF, the court "decline[d] to disregard the amount of controversy in favor of speculative claims about how much an individual might spend [on litigation] if cost were no object." <u>Id.</u> at 1247-48.

32

C.      Analysis

     1.      Burden with regard to choice-of-law issue

Plaintiffs contend that the court's ruling that plaintiffs bear a "heavy burden" to establish the application of California law is contrary to controlling law. Plaintiffs assert that when a party seeks a remedy under the CLRA, America Online requires that the traditional burden of proof regarding the enforcement of a choice-of-law clause be shifted to the party seeking its enforcement. Thus, plaintiffs assert, the court's reliance on Lu v. Dryclean USA is inapposite, as that case did not involve a claim under the CLRA, and the court in that case addressed the application of the general rule regarding choice-of-law burdens, not the exception carved out by the court in America Online.

In finding that AOL bore the burden of proving that enforcement of the forum selection clause "would not result in a significant diminution of rights to California consumers," America Online emphasized that the CLRA statutory scheme "embodies strong remedial provisions for violations of the statute," in which is embedded a provision prohibiting waivers by consumers of any of these remedies." Id. at 10-11 (citing Civil Code § 1751). The court asserted that "[w]here the effect of transfer to a different forum has the potential of stripping California consumers of their legal rights deemed by the Legislature to be non-waivable, the burden must be placed on the party asserting the contractual forum selection clause to prove that the CLRA's anti-waiver provisions are not violated." Id.

The court addressed the choice-of-law issues only as part of its discussion of the forum-selection clause. The court relied on Hall v. Superior Court, 150 Cal. App. 3d 411 (1983), a case brought under California's securities laws, in which the parties' agreement contained a clause designating Nevada as the only appropriate forum, and a provision requiring that disputes be resolved in accordance with Nevada law.

In Hall, the Court of Appeal noted that where both a forum-selection clause and a choice-of-law clause are at issue, the question of the enforceability of the forum-selection clause is "inextricably bound up" in the question of the validity of the choice-of-law provision. Id. at 416, quoted in America Online, 90 Cal. App. 4th at 13. "The reason for

considering them together," the <u>America Online</u> court wrote, "was that absent a choice of

law clause, the selected forum could apply California law to the dispute under the selected

forum's conflict of laws principles. If so, there would be no risk that substantive law might

be employed which would materially diminish rights of California residents in violation of

California public policy." <u>America Online</u>, 90 Cal. App. 4th at 13.

In <u>Hall</u>, the court found that the choice of Nevada law violated the public policy found

in California Corporations Code § 25701 ("Any condition, stipulation or provision purporting

to waive compliance with any provision of this law . . . is void"), which applied where there

was any offer to buy or sell securities in California. <u>Hall</u>, 150 Cal. App. 3d at 417-19.

Similarly, the <u>America Online</u> court concluded, because the CLRA "is a legislative

embodiment of a desire to protect California consumers and furthers a strong public policy

of this state[,] . . . enforcement of AOL's forum selection clause, which is also accompanied

by a choice of law provision favoring Virginia, would necessitate a waiver of the statutory

remedies of the CLRA, in violation of that law's anti-waiver provision (Civ. Code § 1751)

and California public policy." <u>America Online</u>, 90 Cal. App. 4th at 15. For this reason

alone, the court affirmed the trial court's decision.

It is important to note several things here. First, the California Supreme Court set

forth the burden of proof in a choice-of-law question most recently in its decision in

<u>Washington Mutual</u>, as follows:

> [I]f the proponent of the [choice-of-law] clause . . . demonstrates that the
> chosen state has a substantial relationship to the parties or their transaction,
> or that a reasonable basis otherwise exists for the choice of law, the parties'
> choice generally will be enforced unless the other side can establish both that
> the chosen law is contrary to a fundamental policy of California and that
> California has a materially greater interest in the determination of the
> particular issue.

<u>Washington Mut.</u>, 24 Cal. 4th at 917 (citing <u>Nedlloyd</u>, 3 Cal. 4th at 468).

Under this standard, the burden in the present case is on Dell to show either that

Texas has a substantial relationship to the parties or that a reasonable basis exists for the

choice of Texas law. However, plaintiffs previously conceded that a reasonable basis

exists for the choice of Texas law, so Dell's burden under this standard would be satisfied.

34

1   The burden then shifts to plaintiffs to establish both that Texas law is contrary to a

2   fundamental policy of California and that California has a materially greater interest in the

3   determination of the issue.

4       Plaintiffs contend, however, that under the analysis in America Online, the entire

5   burden is shifted to Dell.  Although Washington Mutual was issued five months before

6   America Online, the  America Online court did not cite Washington Mutual (though it did

7   cite other, older, cases referring to the customary rule assigning the burden of proof to the

8   party challenging enforcement of a forum selection clause).  See America Online, 90 Cal.

9   App. 4th at 9-11.  The court's justification for shifting the burden of proof to the defendant

10  AOL – the party seeking enforcement of the forum selection clause – was that the CLRA

11  contains a statutory anti-waiver provision, and the burden was therefore on AOL "to prove

12  that enforcement of the forum selection clause would not result in a significant diminution of

13  rights to California customers."  Id. at 10.

14      It is not clear, however, that America Online can be interpreted as having modified

15  the standard set forth in Washington Mutual.  Because the ruling in America Online

16  centered on the question of the enforceability of the forum-selection clause, not the choice-

17  of-law clause, the America Online court did not apply Restatement § 187(2).

18      In addition, America Online predated Discover Bank by four years.  The California

19  Supreme Court did refer to America Online in Discover Bank, but principally to distinguish it

20  on the basis that the plaintiff in Discover Bank was not invoking the anti-waiver provision of

21  the CLRA, and was not seeking to enforce any obligation imposed by the CLRA or any

22  other California statute, as all the claims were asserted under Delaware law.  Discover

23  Bank, 36 Cal. 4th at 174.  The Discover Bank court stated that America Online held that

24  both the forum-selection and the choice-of-law clauses were unenforceable, and as also

25  holding that the CLRA "overrode" the choice-of-law provision – a point not clearly evident

26  from a reading of America Online.

27      The court agrees with Dell, however, that plaintiff should not be permitted to seek

28  reconsideration on this basis, as the issue of the parties' respective burdens was not raised

35

1   in the motion to compel arbitration.  Nevertheless, the court also agrees that it doesn't

2   matter whether plaintiffs raised this issue or not, as America Online is distinguishable.  In

3   addition, the February 13, 2007 order relied on Discover Bank in finding that the class

4   action waiver in this case didn't violate California public policy.

5       American Online did not involve an agreement to arbitrate.  As discussed above, the

6   FAA preempts consideration of the CLRA's anti-waiver provision in a determination of

7   whether the arbitration clause or the class action waiver is unconscionable.  Ting, 319 F.3d

8   at 1147-48.  Thus, in an action challenging the validity of an arbitration provision, the court

9   cannot consider America Online's argument that Civil Code § 1751 shifts the traditional

10  burden to the party seeking enforcement of the choice-of-law provision (here, Dell),

11  because the CLRA applies only to "consumer contracts," and not to "any contract."

12      Thus, to the extent that plaintiffs may have intended to suggest that the court should

13  have used the CLRA's anti-waiver provision to support a finding that the class action waiver

14  in the arbitration provision violates fundamental California public policy, the court finds that

15  argument foreclosed by the FAA.

16      In their opposition to the motion to compel arbitration, plaintiffs argued that Texas

17  law, which permits class action waivers, conflicts with fundamental California public policy.

18  In addition to citing America Online (public policy in CLRA's anti-waiver provision), plaintiffs

19  cited three other decisions – Discover Bank, 36 Cal. 4th at 160 (class action waiver violates

20  "fundamental notions of fairness); Aral v. EarthLink, Inc., 134 Cal. App. 4th 544, 563-64

21  (2005) (class action waiver held substantively unconscionable under Discover Bank); and

22  Klussman v. Cross Country Bank, 134 Cal. App. 4th 1283, 1292-94 (2005) (class action

23  waiver held unconscionable under Discover Bank).

24      Apart from the CLRA's anti-waiver provision, and the Discover Bank test, plaintiffs

25  have provided no currently valid authority to support their claim that the class action waiver

26  in Dell's "Terms & Conditions" violates fundamental California public policy.  Moreover, the

27  court is aware of none.  Accordingly, the court finds, regardless of which party bears the

28  burden, that Texas law should be applied, as stated in the February 13, 2007 order.

2.      The <u>Gatton</u> decision

As their second ground for seeking reconsideration, plaintiffs argue that the <u>Gatton</u> decision addresses many of the key issues raised in the February 13, 2007, order, and reaches conclusions at odds with that order.  In <u>Gatton</u>, the court held that a contract that "relegates to the subscriber only the opportunity to adhere to the contract or reject it" is a contract of adhesion, and rejected the contention that the existence of market choice altogether negates the "oppression" aspect of procedural unconscionability.  <u>Id.</u> at 582-83.  Plaintiffs claim that the February 13, 2007, order therefore conflicts with California law.

The court finds, however, that <u>Gatton</u> did not change the law.  <u>Gatton</u> found the arbitration agreement procedurally unconscionable because it was offered on a take-it-or-leave-it basis, despite the presence of market alternatives, and found it substantively unconscionable because the $200 fee at issue was "sufficiently small" to bring the case within the ambit of <u>Discover Bank</u>.  Neither of these findings changed the law in any respect.  Moreover, as Dell points out, there was no rescission period at issue in <u>Gatton</u>.  Other courts have found that providing a consumer with an opportunity to rescind an agreement greatly diminishes any aspect of procedural unconscionability.  <u>See</u>, <u>e.g.</u>, <u>Brazil</u>, 2007 WL 2255296 at *5-6.

3.      Standard to be applied in considering motion to compel arbitration

With regard to the third ground for seeking reconsideration, plaintiffs assert that the court improperly found that it did not "make sense" that Dell would deliberately manufacture computers that were defective.

This was a perhaps inartful way of expressing the concept that insofar as the allegations in the FAC might be construed as a claim that Dell engaged in a "scheme to cheat large numbers of consumers,"[4] it did not make sense to claim that a "scheme"

---

[4]    Plaintiffs do not really allege a "scheme to deliberately cheat large numbers of consumers out of individually small amounts of damages."  The only "scheme" allegation is the assertion that "[t]he class action waiver is part of a scheme by Dell, the party with superior bargaining power, to exempt itself from responsibility for its fraudulent or willfully injurious actions described herein."  FAC ¶ 39.

1    involving the manufacture of defective computers was the type of scheme alluded to by the

2    California Supreme Court in <u>Discover Bank</u>.

3        In <u>Discover Bank</u> and the cases applying <u>Discover Bank</u>, the "scheme" generally

4    involves a bank, mobile phone service provider, Internet service provider, or other business

5    entity engaged in a long-term service or customer relationship with consumers which has

6    engaged in a deceptive practice designed to squeeze a few dollars out of each of its

7    customers, preferably without any customer realizing it, or, at a minimum, without any

8    customer feeling it worth his or her while to pursue.[5]  By contrast, a "scheme" to

9    manufacture defective electronics would be obvious, as the electronics would fail, and

10   would also be counterproductive, as the results of such a scheme would be that the

11   company would be forced to do numerous repairs on computers that were still under

12   warranty, would have to defend against small claims court suits, and would likely earn bad

13   consumer ratings.

14       In any event, the court is not persuaded by plaintiffs' argument that the court was

15   required to apply the summary judgment standard in evaluating whether the class action

16   waiver violates a fundamental California policy, for purposes of the choice-of-law analysis.

17   It is true that when considering a motion to compel arbitration, where the plaintiff opposes

18   the motion on the ground that he/she/it did not enter into a valid agreement to arbitrate, the

19   court is supposed to apply a standard similar to the Rule 56 standard.

20       In <u>Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.</u>, 636 F.2d 51 (3rd Cir. 1980),

21   the court held that

22       [b]efore a party to a lawsuit can be ordered to arbitrate and thus be deprived
         of a day in court, there should be an express, unequivocal agreement to that
23       effect.  If there is doubt as to whether such an agreement exists, the matter,
         upon a proper and timely demand, should be submitted to a jury.  Only when
24       there is no genuine issue of fact concerning the formation of the agreement
         should the court decide as a matter of law that the parties did or did not enter
25       into an agreement.  The district court, when considering a motion to compel

26   _____

27       [5] As Judge Posner stated in a recent opinion, "The <u>realistic</u> alternative to a class action
     is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for
28   $30."  <u>Carnegie v. Household Int'l, Inc.</u>, 376 F.3d 656, 661 (7th Cir. 2004), <u>cited in</u> <u>Shroyer</u>,
     498 F.3d at 992.

> arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise.

Id. at 54 (footnotes omitted).  In a footnote, the court added that "[t]his standard is quickly recognized as the standard used by district courts in resolving summary judgment motions pursuant to Fed.R.Civ.P. 56(c)."  Id. n.8.  This formulation of the standard was adopted, verbatim, by the Ninth Circuit in Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc., 925 F.2d 1136, 1141 (9th Cir. 1991); see also McCarthy v. Providential Corp., 1994 WL 387852 at *2 (N.D. Cal., July 19, 1994).

As Dell notes, however, this standard is applied in determining whether there is a valid agreement to arbitrate.  Plaintiffs have cited no cases applying the Rule 56 standard in the analysis of a choice-of-law issue.  Moreover, even assuming that plaintiffs are correct that the court should not have characterized plaintiffs' claims as making "no sense" – that the court should have given plaintiffs the benefit of reasonable doubts and inferences insofar as the allegation that Dell engaged in a "scheme" was concerned – the ruling in the February 13, 2007, order was not premised on that particular evaluation of plaintiffs' claims.

Rather, the determinative finding was that the alleged "scheme" to manufacture and sell defective laptop computers costing approximately $1500 did not arise "in a setting in which disputes between the contracting parties predictably involve small amounts of damages" and that Dell ("the party with the superior bargaining power") did not therefore "carr[y] out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money."  Discover Bank, 36 Cal. 4th at 162-63.

4.    Whether application of Texas law would result in plaintiffs' losing
      substantive rights

Plaintiffs' fourth basis for seeking reconsideration is that the court improperly found that the application of Texas law would not result in the plaintiffs' losing substantive rights. Plaintiffs argue that the right to bring a class action is not merely procedural, and that under Gatton and Discover Bank, class actions may be, especially in the consumer context,

39

"inextricably linked to the vindication of" substantive rights.

In their opposition to the motion to compel arbitration, plaintiffs argued that the class action waiver violates a fundamental California public policy prohibiting waivers of classwide arbitration. Citing to Restatement § 187, comment b, plaintiffs also asserted that courts will refuse to enforce choice-of-law clauses where a "substantial injustice would result or where the contract was unfairly imposed." They also referred to the fact that the California Supreme Court in <u>Washington Mutual</u> had more-or-less adopted this standard when it stated that "the weaker party to an adhesion contract may seek to avoid enforcement of a choice-of-law provision therein by establishing that a 'substantial injustice' would result from its enforcement <u>or</u> that superior power was unfairly used in imposing the contract." <u>Washington Mut.</u>, 24 Cal. 4th at 1079.

In the February 13, 2007, order, the court noted that the California Supreme Court had "referred generally to this standard" in <u>Washington Mutual</u> and <u>Discover Bank</u>, but that it had provided "no meaningful guidance as to its application." The February 13, 2007, order then continued,

> Plaintiffs argue that substantial injustice would result if all proposed class members were "deprived of their right to invoke the laws of California designed to regulate business in California." Plaintiffs assert that "California law provides substantial rights to consumers harmed by unfair business practices in California, rights which Texas law would not provide in this case, including the right to bring a class action," and claim that "substantial injustice would result if Dell's conduct with respect to California consumers escaped the scrutiny and consequences of California law."

> This is not a convincing argument. Plaintiffs refer to "rights" that Texas law would not provide in this case, but the only "right" they actually mention is the "right to bring a class action." They refer to the problems that would ensue if "Dell's conduct . . . escaped the scrutiny and consequences of California law," but this is little more than hyperbole. Plaintiffs have not made any substantive argument suggesting that enforcing the choice-of-law provision would result in "substantial injustice" to plaintiffs.

Order at 8.

Thus, it is not quite accurate for plaintiffs to say that the court held that the application of Texas law – and plaintiffs' consequent inability to pursue their claims in a class action – "would not result in plaintiffs' losing substantive rights." All the court said was

40

1   that the only "right" plaintiffs mentioned was the "right" to bring a class action, and that they

2   had not made any substantive arguments suggesting that enforcing the choice-of-law

3   provision would result in "substantial injustice." For their part, plaintiffs in their opposition to

4   the motion to compel arbitration did not cite any authority for their "substantial injustice"

5   argument.

6       Moreover, while it is true that the California Supreme Court appears to have given its

7   imprimatur to this factor, the contours of any "substantial injustice" inquiry have not been

8   fleshed out by the California courts. Indeed, most decisions applying Restatement § 187

9   do not even mention this factor.

10      As for the argument that the right to bring a class a action may be "inextricably linked

11  to the vindication of" substantive rights, plaintiffs have not explained how that is true under

12  the facts of this case. In Discover Bank, the court's conclusion that class actions and class

13  arbitrations are "particularly in the consumer context, often inextricably linked to the

14  vindication of substantive rights," and that class actions thus should not be characterized as

15  purely "procedural," was based on its ruling that in a case in which a company "wrongfully

16  exacts a dollar [or other small amount] for each of millions of customers . . . , the class

17  action is often the only effective way to halt and redress such exploitation." Discover Bank,

18  36 Cal. 4th at 161 (quoting Linder v. Thrifty Oil Co., 23 Cal. 4th 429, 446 (2000)).[6]

19      In other words, a class action may be "inextricably linked" to the vindication of

20  substantive rights if the individual claims are so small that it is highly unlikely that any

21  individual plaintiff would file suit against a company who had violated the law. As numerous

22  California cases have made clear, absent the ability to bring a class action, the plaintiffs

23  (and their attorneys) would never recover anything from the wrongdoer. Thus, if the class

24  action waiver in a particular case does not violate fundamental California policy under the

25

26          [6] Linder was a proposed class action in which the plaintiffs alleged that the defendant
27  Thrifty Oil Co. had charged customers at its service stations $.04 more per gallon when they
    paid by credit card, and had used credit card forms that contained a preprinted space for the
28  customers to fill in their telephone numbers – both of which were prohibited under California
    law.

<u>Discover Bank</u> rule, because the dispute did not arise "in a setting in which disputes between the contracting parties predictably involve small amounts of damages," it is not clear how a class action in that particular case could be "inextricably intertwined" with the vindication of substantive rights.

     5.    Whether the recently-filed cases add anything

Finally, the court finds that none of the cases submitted by the parties changes the law in any material way. The decision in <u>Douglas</u> turned on whether the telephone service provider had notified the plaintiff that the contract had changed, not on whether the class action waiver violated California public policy such that a choice-of-law provision could not be enforced.

In <u>Brazil</u>, a district court decision not binding on this court, the court applied <u>Discover Bank</u>, and found that the individual damages claimed were sufficiently small to come within the rule in that case. The court in <u>Brazil</u> also stated that it was not holding that a class action waiver would be unconscionable under circumstances other than the ones in the case before it.

The decision in <u>Oestreicher</u> (also a district court decision) does appear to be at odds with the decision in the present case. In <u>Oestreicher</u>, the court cited the February 13, 2007, order in this case, quoting the conclusion that "[a]t most, . . . the <u>Discover</u> court found a limited policy against class action waivers." The <u>Oestreicher</u> court disagreed with this statement, citing three cases – <u>Klussman</u>, 134 Cal. App. 4th at 1298 ("Delaware's approval of class action waivers, especially in the context of a 'take it or leave it' arbitration clause[,] is contrary to fundamental public policy in California"); <u>Aral</u>, 134 Cal. App. 4th at 564 (class action waiver in context of suit by California residents seeking recovery pursuant to UCL implicated a fundamental public policy – the right of California to ensure that its citizens have a viable forum in which to recover minor amounts of money allegedly obtained in violation of the UCL); and <u>America Online</u>, 90 Cal. App. 4th at 18 (unavailability of class action relief in context of the case was sufficient in and by itself to preclude enforcement of a choice-of-law clause and a forum-selection clause favoring Virginia law).

42

However, this court has already distinguished <u>America Online</u>, which pre-dated <u>Discover Bank</u> in any event, and <u>Klussman</u> and <u>Aral</u> both clearly recognized that <u>Discover Bank</u> did <u>not</u> hold that all class actions were unconscionable. Where the present case differs most noticeably from the <u>Oestreicher</u> opinion is in the <u>Oestreicher</u> court's ruling that $4000 in damages resulting from the defendant's sale of a defective computer constituted a small amount of damages. This court simply does not agree that the sales of high-end electronics, such as computers, occur in "a setting in which disputes between the contracting parties predictably involve small amounts of damages," as required under <u>Discover Bank</u>.

In <u>Shroyer</u>, the Ninth Circuit held that <u>Discover Bank</u>'s requirements were satisfied, based in part on the fact that the contract was presented on a "take it or leave it" basis and the damages involved "hundreds of dollars." Though the court did cite <u>Cohen</u> with approval, the significance of that citation is not clear. In <u>Cohen</u>, the damages were generally fairly small ("fees in small amounts," such as the monthly fee of $10.99 a month, see <u>Cohen</u>, 142 Cal. App. 4th at 1452), and the court only referred to the "$1,000" figure as an estimate of the highest end of the damages spectrum ("the cost for the decoder box the consumer must purchase in order to receive DirecTV's high definition package – an expense amounting, in some instances, to more than $1,000," <u>id.</u>). At any rate, <u>Shroyer</u> simply applied <u>Discover Bank</u>.

<u>Gentry</u> is in a category by itself, as it is a case involving class arbitration of wage and hour claims. It's hard to say how <u>Gentry</u> could be viewed as changing the law in the consumer class action context, as at least two of the three factors cited by the court in <u>Gentry</u> do not apply here – the factor that a current employee who sues his employer is at greater risk of retaliation, and the factor that some individual employees might not sue because they are unaware that their employer is required to pay them overtime wages.

Finally, while the reasoning in <u>Carideo II</u> is persuasive, it is nevertheless a decision by a federal district court interpreting and applying Washington law, not California law.

**CONCLUSION**

To make an extremely long story short, the court finds that plaintiffs have not established that reconsideration is warranted in the present action. Accordingly, the motion is DENIED.

The parties shall file a joint status statement no later than April 7, 2008, advising the court of the status of the arbitration proceedings.

**IT IS SO ORDERED.**

Dated: February 5, 2008

_____
PHYLLIS J. HAMILTON
United States District Judge

44